IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| JEROME JACKSON | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-05-365 |
| | § | |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF SOCIAL SECURITY | § | |

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiff Jerome Jackson's action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of a final decision of the Commissioner of the Social Security Administration denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et. seq.* Both parties have filed Motions for Summary Judgment. After considering the parties' motions and the record in this case, the Court submits its Report and Recommendation to the District Court.

**Background**

Plaintiff filed his application with the Commissioner on August 30, 2001, claiming that his disability began on June 1, 2001, due to "severe back pain and lumbar spine impairment." Transcript ("Tr.") at 46-49. Plaintiff later claimed his disability was also due to depression. Tr. at 14.

At the time he filed his application for disability benefits in 2001, Plaintiff was approximately 45 years old. Tr. at 203. He lists his work experience as that of a heavy equipment operator and reports doing such work for about fifteen (15) years. Tr. at 204. Plaintiff reportedly injured his back in 1995, when he was picking up a heater at work. Tr. at 104, 113, 162. The last

1

job Plaintiff had prior to filing his disability claim, was a temporary job where his work included loading bags, weighing up to 100 pounds, but he reports that he left this job, apparently not because of back pain, but because some chemicals he was loading got on his leg and burned him. Tr. at 205.

Plaintiff's application was denied, and he requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before an ALJ on June 3, 2003. Tr. at 201-18. On June 17, 2003, the ALJ issued an unfavorable opinion. Tr. at 10-18. The ALJ determined:

1. The claimant meets the non-disability requirements for a period of disability and disability benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

7. The claimant has the following residual functional capacity: a restricted range of sedentary work limited by his need to alternately change from sitting to standing at will; ability to perform only limited bending, kneeling, and stooping; and need to perform only low stress jobs.

8. The claimant is unable to perform any of his past relevant work. (20 CFR § 404.1565).

9. The claimant is a "younger individual" (20 CFR § 404.1563) with a "high school education (20 CFR § 404.1564).

10. The claimant has no transferable skills from any past relevant work. (20 CFR § 404.1568).

> 11. The claimant has the residual functional capacity to perform a significant range of sedentary work. (20 CFR § 416.967).
>
> 12. Although the claimant's exertional limitations does not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a final assembler, order clerk, and lens polisher. The vocational expert testified that there are approximately 2000 such jobs that exist in the local economy and approximately 200,000 such jobs that exist in the national economy.
>
> 13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

Tr. at 17-18. After the Appeals Council denied review, Petitioner filed the instant suit.

## Discussion

A federal court reviews the Commissioner's denial of benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 472, 473 (5th Cir. 1999). Substantial evidence is defined as being more than a scintilla and less than a preponderance and of such relevance that a reasonable mind would accept it as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). If the Commissioner's findings are adjudged to be supported by substantial evidence, then such findings are conclusive and must be affirmed. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). A court does not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. *Id.* Conflicts in the evidence are for the Commissioner, not the Court, to resolve. *Brown*, 192 F.3d at 496.

A claimant bears the burden of proving he suffers from a disability under the Social

3

Security Act. *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). The mere presence of an impairment does not necessarily establish a disability. *Id.* A claimant is only disabled within the meaning of the Social Security Act if he has a medically determinable physical or mental impairment lasting at least 12 months that prevents him from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). To determine whether an individual is disabled, the Commissioner utilizes the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(b)-(f). If the Commissioner decides at any step along the way that an individual is not disabled, the evaluation process comes to a halt at that particular step and proceeding further becomes unnecessary. *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984). If, however, the claimant shows that he is disabled under the first four steps, the burden then shifts to the Commissioner at the fifth step to demonstrate that the claimant can perform other substantial work in the national economy. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). Finally, only if the final step in the process is reached does the fact-finder consider the claimant's age, education, and work experience in light of his or her residual functional capacity. *See Rivers v. Schweiker*, 684 F.2d 1144, 1152-1153 (5th Cir. 1982).

Here, the ALJ found that Plaintiff was not disabled because, although he could not return to his past relevant work as a heavy equipment operator, he had the residual functional capacity ("RFC"), meaning the most he could do despite his limitations, to perform other work existing in significant numbers in the national economy, such as file assembler, an order clerk, or lens polisher.

The RFC and Treating Physician Issue

Plaintiff first argues that the ALJ's determination that he retained the RFC to do sedentary work is not supported by substantial evidence since it is based on the ALJ erroneously rejecting the opinions of his treating doctors without applying the six step analysis set forth in the regulations[1] and in *Newton*.[2]

Contrary to Plaintiff's assertions, the ALJ did not entirely reject the opinions of his treating doctors and, in fact, incorporated many of their opinions into his RFC determination. Specifically, the ALJ concluded that Plaintiff's RFC was limited by the need to sit or stand at will and the ability to perform only limited bending, kneeling, and stooping (Tr. at 16), thus reflecting the September 2001 opinion of his treating physician, Dr. Gorback, that he could not sit for longer than two hours at a time or stand/walk for longer than one hour at a time, and that he could not bend, stoop or kneel on a sustained basis at a regular job. Tr. at 111. In addition, the ALJ concluded that Plaintiff was limited to performing only "low stress" jobs (Tr. at 16), thus incorporating the opinion of his treating psychiatrist, Dr. Patel, that he was "capable of low stress" because, in Dr. Patel's opinion, he possessed "sufficient intellectual functioning" to perform this level of work. Tr. at 187.

The ALJ rejected Dr. Gorback's opinion that Plaintiff was "likely to be absent from work...more than three times a month" due to his back condition (Tr. at 16, 111), and Dr. Patel's opinion that Plaintiff was "moderately limited" in other broad functioning areas such as understanding and memory, sustained concentration and persistence, and social interactions. Tr. at 16, 183-87. However, the ALJ's rejection of these proposed limitations in the Plaintiff's RFC was

---

[1] 20 C.F.R. 404.1527(d)(2) -(6).

[2] *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).

not erroneous.

An ALJ has "the sole responsibility for determining a claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). This includes the determination of a claimant's RFC. *Ripley*, 67 F.3d at 557. A residual functioning capacity determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988). In this case, the ALJ stated that he considered the entire record, which included the medical records from Dr. Gorback and Dr. Patel. The ALJ also stated that "[i]n coming to the conclusion regarding the claimant's ability to perform a restricted range of sedentary work as noted above, the undersigned finds the objective medical evidence to be quite convincing regarding the claimant's exertional and non-exertional limitations." Tr. at 16. An ALJ is not required to specifically articulate the evidence accepted and rejected in making his determinations because any such requirement is unnecessarily rigid. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

Moreover, the ALJ's decision to reject these aspects of his treating physicians' opinions was not erroneous because the opinions regarding these proposed limitations were not supported by the medical evidence. Ordinarily, the opinions of treating physicians are given considerable weight in determining disability, though less weight can be given if good cause is shown. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). This is especially true when the treatment period has been over a considerable period of time. *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). Good cause includes conclusory statements from the treating physician, opinions otherwise unsupported by the evidence, or conclusions unsupported by medically accepted clinical techniques. *Newton*, 209 F.3d at 456.

With regard to Dr. Gorback's opinion, the ALJ noted that the medical records revealed that Plaintiff has a long history of back pain, but his neurological examinations were all "essentially normal with no sensory, motor, or reflex abnormalities." Tr. at 16. Specifically, Dr. Gorback's neurological exam in August of 1998 revealed "no sensory or motor deficits." Tr. at 104. Subsequent neurological examinations also showed no significant neurological deficits. Tr. at 114, 168. The records before the ALJ also showed that shortly after he claims his disability began, Dr. Gorback completed, at the request of Plaintiff's counsel, a "lumbar spine impairment questionnaire" on September 18, 2001, in which he includes his findings and proposed limitations, noting that, at that point, he had not been able to relieve Plaintiff's pain. Tr. at 108. However, the records reviewed by the ALJ showed that in early 2002, Dr. Gorback surgically implanted a morphine pump in Plaintiff's back for pain control. Tr. at 131, 133. Significantly, in May 2002, Dr. Gorback notes in Plaintiff's medical records that he "continues to pursue disability benefits. I explained to him that with his pain under control, he does not require disability benefits." Tr. at 128. Dr. Gorback's notes go on to express his opinion that Plaintiff did not have "limiting disabilities that would prevent him from pursuing more sedentary work." Tr. at 128. Dr. Gorback's progress notes also contain repeated recommendations to Plaintiff of the need for vocational rehabilitation. Tr. at 92, 94, 100, 102, 128, 136. Therefore, taking Dr. Gorback's opinions, not in isolation, but combined with all his treating records, that only revealed few objective findings, there is substantial support for the ALJ's determination. When there are inconsistencies in the treating doctor's medical opinion, as there were here, an ALJ is properly entitled to consider this fact in deciding whether a claimant is disabled. 20 C.F.R. § 404.1527 (c)(2); *see also See* 42 U.S.C. § 423(d)(1)(A) (requiring disability to last for a continuous period of not less than 12 months); *Johnson*, 864 F.2d at 348 (condition

controlled by medication or therapy cannot serve as a basis for a finding of disability).  The ALJ is responsible for resolving conflicts in evidence, and this Court will not substitute its judgment for his. *Newton*, 209 F.3d at 452.

Turning to Dr. Patel's opinion, the ALJ's decision reflects that he reached his determination after reviewing the record as a whole, to include not only Dr. Patel's assessment, but also Plaintiff's testimony.  An ALJ is entitled to do so.  *Hollis*, 837 F.2d at 1386-87 (in determining the RFC, an ALJ is entitled to consider the combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work").  Based on his review of the entire record, the ALJ determined that "the claimant's impairment of depression slightly restricts his activities of daily living; slightly results in difficulties in maintaining social functioning; moderately has resulted in deficiencies of concentration, persistence or paces resulting in failure to complete tasks in a timely manner (in work or elsewhere); and has never resulted in episodes of deterioration, each of an extended duration."  Tr. at 16.  The ALJ's conclusion is supported by substantial evidence in the record.  For example, the records before the ALJ showed that Plaintiff was hospitalized, based on claims of suicidal ideation, from September 25 to September 30, 2002.  Tr. at 161-180.  Plaintiff had no prior mental health history. Tr. at 152.  As noted by the ALJ, the Plaintiff was diagnosed with "depression, single episode with many psycho-social stresses" and treated with medication that consisted of Zoloft and Trazadone. Tr. at 15, 150, 162.  Plaintiff's psycho-social evaluation showed  that he has a history of alcohol, cocaine, and crack cocaine abuse. Tr. at 15, 152.  Dr. Patel followed him after his discharge and his notes reflected that in October  2002, Plaintiff's mood was "okay," his affect was "appropriate," and he was goal directed.  Tr. at 152.   In November 2002, the notes reflect that while Plaintiff reported

his mood as "so-so" and his affect was blunted, his speech was normal and he continued to be goal directed. Tr. at 154. From January through March 2003, Plaintiff reported his mood was "the same," but his affect was appropriate and he remained goal directed. Tr. at 156, 160. In fact, the mental health records before the ALJ showed improvement in all Plaintiff's symptoms with medication and treatment. Tr. at 147. Plaintiff also testified at the hearing that he continued to take Zoloft for his depression and, since receiving treatment with the psychiatrist, he has improved "[a] great deal." Tr. at 209-210. An ALJ may properly reject all or portions of a physician's opinion when the overall evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995). Here, in determining his limitations, the ALJ properly relied on more than a scintilla of evidence that he could reasonably accept as adequate to support [his] conclusion. *See Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (ALJ entitled to resolve conflicts between physician's opinion and claimant's testimony regarding limitations).

Finally, contrary to Plaintiff's assertions, the ALJ was not required to go through all six steps in *Newton* in the face of competing first-hand medical evidence. *Newton*, 209 F.3d at 458; *Walker v. Barnhart*, No. 04-31256, 158 Fed. Appx. 534 (5th Cir. Dec. 9, 2005) (interpreting *Newton* as not requiring the six-step analysis in the face of competing first-hand medical evidence); *see also Spellman v. Shalala*, 1 F.3d 357, 364-65 (5th Cir. 1993) (an opinion of a treating physician is not given controlling weight when it is inconsistent with other substantial evidence in the record).

In conclusion, because contrary reliable evidence existed in opposition to Plaintiff's claim that his limitations prevented him from performing sedentary work, substantial evidence supported the ALJ's decision. Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** and Defendant's Motion be **GRANTED** on this point.

<u>The Vocational Expert Issue</u>

Plaintiff alleges that the ALJ improperly utilized the testimony of vocational expert ("VE") Brian Pettingill. (Pl. Mot. at 18). More specifically, Plaintiff maintains that the ALJ posed an improper and incomplete hypothetical to the VE and, in responding, the VE did not testify about the existence of a Commissioner ruling against such a hypothetical, which Plaintiff claims *per se* invalidates the testimony of the VE. (Pl. Mot. at 19).

In support of his contention that the hypothetical was improper, contrary to the Commissioner's rulings, and *per se* invalid, Plaintiff relies upon *Scott v. Shalala*, 30 F.3d 33, 34-35 (5th Cir. 1994) and on Social Security Ruling ("SSR") 83-12. Plaintiff's reliance is misplaced. Unlike the case in *Scott v. Shalala,* the ALJ did not rely upon the grid in making his determination that Plaintiff was not disabled, but instead relied upon the testimony of the vocational expert to determine the impact this limitation had on the occupational base. Tr. at 16-17, 216. *Cf Scott*, 30 F.3d at 35 (since the ALJ's reference was vague and confusing, the court could not determine, based on record whether ALJ properly considered the testimony of the VE). Furthermore, SSR 83-12 provides adjudicative guidance when the claimant's limitations do not meet a defined exertional capacity. SSR 83-12. Under the heading of "special situations" the Statement discusses the impact of a finding that the claimant must alternate between periods of sitting and standing. A claimant is defined as functionally not capable of doing either the prolonged sitting contemplated in the definition of sedentary work or the prolonged walking or standing contemplated for most light work. *Id.* Since the occupational base is greatly reduced, an ALJ is directed to consult a vocational expert in these situations. *Id.*

Here the ALJ properly availed himself of the assistance of a VE at the hearing. Tr. at 17, 215-17. The VE testified that he was familiar with the definitions and rules regarding disability. Tr. at 215. The ALJ properly instructed the VE to hypothetically consider several limitations or

impairments in order to properly determine the disability status of a claimant.  Tr. at 17, 215-217. The vocational expert testified as to the impact of these limitations, which included an at will sit/stand option, on the available occupational base.  The vocational expert testified that unskilled sedentary jobs existed in both the local and national economies for a claimant with such a sit/stand limitation.  Tr. at 16-14; 216.

Plaintiff also contends that the hypothetical was incomplete because the ALJ did not incorporate the "moderate limitations in several areas of mental functioning" consistent with the limitations imposed by Dr. Patel; and because it failed to include Dr. Gorback's limitation that Plaintiff would miss work more than three times a month.  (Pl. Mot. at 19-20).  The courts have consistently held where "the hypothetical [question] reasonably incorporated the disabilities recognized by the ALJ, and that [claimant's] representative had an opportunity to correct any defect in the hypothetical by mentioning additional limitations to the vocational expert" no reversible error exists.  *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).  The ALJ's hypothetical was not improper because, as previously discussed, it incorporated all the disabilities recognized by the ALJ that were supported in the record.  Furthermore, while the ALJ did not incorporate Dr. Gorback's 2001 proposed limitation that Plaintiff might miss 3 or more days per month, Plaintiff's attorney, had the opportunity to, and did in fact, correct any perceived defect in the hypothetical, by adding this additional limitation.  *Morris*, 864 F.2d at 336.  An ALJ is not, however, bound by the testimony of a vocational expert which is based upon evidentiary assumptions that the ALJ ultimately rejects. *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985).  Here, the ALJ was not bound by this additional limitation as substantial evidence existed that it was not supported in the record.

The Court therefore **RECOMMENDS** that Plaintiff's Motion be **DENIED** and Defendant's Motion be **GRANTED** on this point.

The Subjective Complaint of Pain Issue

Plaintiff alleges that the ALJ erred by rejecting his subjective complaints concerning pain. Plaintiff's objection is essentially aimed at the ALJ's determination that his testimony at the hearing was not credible and he maintains that the ALJ erred by not indicating the credibility choices made and the basis for making those choices. (Pl. Mot. at 20).

It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference as long as it is supported by substantial evidence. *Newton*, 209 F.3d at 459; *see also*, *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001). The judge must consider a claimant's testimony and must indicate reasons for the credibility decision. *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1983).

The ALJ explained that he considered and evaluated all Plaintiff's symptoms in accordance with the requirements of 20 C.F.R. § 404.1529 and SSR 96-7p. Tr. at 15. Although not set forth in a perfect format, the ALJ decision reflects adequate consideration of the factors. An ALJ need not "follow formalistic rules in his articulation" as any such requirement would be unnecessarily rigid. *Falco*, 27 F.3d at 163-64. Moreover, procedural perfection in an administrative proceeding is not required and an administrative determination will not be set aside absent a showing that the substantial rights of a party have been affected. *Morris*, 864 F.2d at 335.

Here, the ALJ did not actually reject Plaintiff's testimony, but merely discounted it as not entirely credible based on substantial evidence. During the hearing, the ALJ noted that he heard testimony from Plaintiff about his pain and symptoms, his treatment, his medication and its effectiveness, and his daily activities. Tr. at 15, 205-214. The ALJ heard the Plaintiff's testimony that one of his previous doctors had recommended surgery but he chose not to proceed (Tr. at 205-206), and that his pain management treatment helped his pain to a limited degree. Tr. at 15. The

ALJ also heard testimony from Plaintiff that he has seen a mental health doctor, was taking Zoloft for his depression, and that his mental health had improved "a great deal." Tr. at 209-210.

Although there does not appear to be any dispute that Plaintiff suffers from pain related to his 1995 back injury, the mere existence of pain is not an automatic ground for obtaining disability benefits. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980). Nor is the fact that a claimant cannot work without pain the basis for a disability finding. *Barajas*, 738 F.2d at 644. Pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment in order to be disabling." *Falco*, 27 F.3d at 163. Moreover, a plaintiff's subjective complaints must "be corroborated, at least in part, by objective medical findings." *Maharajh v. Barnhart*, 424 F.Supp.2d 915, 933 (S.D. Tex. 2006). The ALJ is not required to "give subjective evidence precedence over medical evidence." *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir. 1985). Here, the ALJ found "the objective medical evidence to be quite convincing regarding the claimant's exertional and non-exertional limitations. The objective medical evidence of record reveals the claimant has a long history of back pain but neurological examinations have been essentially normal with no sensory, motor, or reflex abnormalities." Tr. at 16. The records before the ALJ also showed that while Plaintiff alleges constant pain, his treating physician's notes show at least some periods of improvement with control of his pain. Tr. at 100-102, 128. Moreover, Plaintiff's own treating physician, Dr. Gorback noted that "I do not think he [Plaintiff] has limiting disabilities that would prevent him from pursuing more sedentary work." Tr. at 128. Therefore, Plaintiff's testimony that he could not perform any work activities because of his back pain is contradicted by the objective medical evidence, including his own physician's opinion that he did not have "limiting disabilities" that would prevent him from performing sedentary work." Tr. at 128. Giving proper deference in its review, this Court cannot find that the ALJ erred in deeming Plaintiff's statement lacking in credibility as substantial evidence

13

supports the ALJ's determination.

The Court therefore **RECOMMENDS** that Plaintiff's motion be **DENIED** and that Defendant's motion be **GRANTED** on this issue.

## Conclusion

For all the reasons stated above, Plaintiff has not carried his burden of proof in showing that the ALJ's decision is not supported by substantial evidence. The Court, therefore, **RECOMMENDS** that the Plaintiff's Motion for Summary Judgment (Instrument No. 10) be **DENIED;** Defendant's Motion for Summary Judgment (Instrument No. 12) be **GRANTED;** and that this action be **DISMISSED**.

The Clerk **SHALL** send copies of this Report and Recommendation to the Parties. Plaintiff **SHALL** have until **August 31, 2006**, in which to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk. The Objections SHALL be mailed to the Clerk's Office in Galveston, Texas 77553 at P.O. Drawer 2300. **Any Objections filed SHALL be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge"**, which will then be forwarded to the District Judge for consideration. Failure to file written objections within the prescribed time **SHALL** bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this ____15th____ day of August, 2006.

_____
John R. Froeschner
United States Magistrate Judge